NOTICE

Decision filed 11/25/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230343-U

NO. 5-23-0343

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 17-CF-190 |
| | ) | |
| MARKES N. RODGERS, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice McHaney and Justice Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's denial of petitioner's postconviction pleading is reversed where the case must be remanded for Rule 651(c) compliance.

¶ 2   Defendant, Markes N. Rodgers, appeals the denial of his postconviction petition. For the following reasons, we reverse and remand for Rule 651(c) compliance (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)).

¶ 3                                   I. BACKGROUND

¶ 4   On September 11, 2017, defendant was charged, by information, with attempted murder in violation of section 9-1(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/9-1(a)(1) (West 2016)). The charge alleged that defendant shot at Kimberly Rodgers three times on September 9, 2017. On October 13, 2017, defendant was charged, by information, with a second count of

1

aggravated discharge of a firearm, in violation of section 24-1.2(a)(2) of the Code (*id.* § 24-1.2(a)(2)). The second count alleged that defendant discharged a firearm in the direction of Kimberly Rodgers and the act occurred within 1,000 feet of a school.

¶ 5     On January 30, 2018, a negotiated plea agreement was presented to the trial court. Pursuant to the plea agreement, defendant would plead guilty to aggravated discharge of a firearm within 1,000 feet of a school and the State would dismiss the attempted murder charge and agree to cap its recommended sentence at 13 years. After the trial court admonished defendant of the waiver of his rights, the potential sentence and collateral consequences related thereto, and questioned defendant about his mental capacity, the court found that defendant "knowingly and voluntarily pled guilty." The State provided the factual basis and no objection to the factual basis was raised by defendant or his counsel. The court provided defendant with a "last chance" to change his mind about the plea, but the offer was rejected. The court asked defendant if he was satisfied with the services provided by his trial counsel and defendant responded, "Yes, sir, very much." Defendant also confirmed that he had sufficient time to meet with his trial counsel, talk with him about his case, and have him answer defendant's questions. Thereafter, the court found that defendant "persist[ed] in his guilty plea" and found defendant guilty of aggravated discharge of a firearm. Following a sentencing hearing on March 20, 2018, defendant was sentenced to 10 years in the Illinois Department of Corrections and 3 years' mandatory supervised release.

¶ 6     On February 18, 2021, defendant filed a *pro se* petition for postconviction relief. The petition claimed his sentence was excessive and his counsel provided ineffective assistance. As to the former, defendant argued that he had no criminal record, was a productive parent and member of the community, had excellent rehabilitative potential, and the victim was uninjured. As to the latter, defendant contended that counsel failed to interview witnesses, investigate the victim,

suppress defendant's recorded interview, raise post-traumatic stress as it applied to defendant's competency, obtain an expert related to defendant's diabetes and cognitive ability, investigate the crime scene, accept defendant's version of events, challenge the search warrants, and appeal the case after the sentencing hearing.

¶ 7 The trial court found the petition had merit, advanced it to the second stage, and appointed counsel. On March 3, 2021, the State moved to dismiss defendant's request to reduce sentence arguing the request was untimely. On October 5, 2021, postconviction counsel filed a Rule 604(d) certificate that stated counsel "consulted with the Defendant in person to ascertain Defendant's contentions of error in the entry of the plea of guilty and sentence" and "examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing." The certificate further asserted that counsel and defendant "determined no additional supplemental pleadings [were] necessary." On January 14, 2022, defendant filed a motion for substitution of postconviction counsel alleging insufficient communication, a lack of diligence in representation, and a potential conflict of interest. Postconviction counsel filed a response indicating that he had communicated with defendant, COVID was making further communication difficult, but stated alternative counsel could be appointed. Following a hearing on February 24, 2022, the trial court denied defendant's motion to substitute postconviction counsel.

¶ 8 On April 21, 2022, postconviction counsel filed a motion for leave to withdraw defendant's guilty plea. The motion argued that defendant was immediately placed in 30-day segregation following sentencing due to his status as a former police officer and defendant's trial counsel failed to appeal the case after the sentencing hearing, as requested by defendant. Following a hearing, the trial court granted the motion for leave. On May 6, 2022, postconviction counsel filed a motion to withdraw defendant's guilty plea. That motion alleged claims of ineffective assistance of trial

3

counsel as to evidence that was never investigated by counsel. On September 16, 2022, the State filed an answer to defendant's motion to reconsider sentence and therein also requested a dismissal of defendant's motion to withdraw his guilty plea, arguing it was untimely. On September 20, 2022, defendant moved to strike the State's requested dismissal of defendant's motion to withdraw his guilty plea.

¶ 9    A hearing on the motion to dismiss and postconviction pleading was held on September 22, 2022. Testimony was provided by defendant's trial counsel, Gregory Grigsby, who admitted that he focused on trying to get defendant a lesser sentence due to the potential sentence with the charged offenses. He stated that he did not personally talk to any witnesses, only reviewed their statements, and could not recall if he went over the statements or discussed any weaknesses he might capitalize on in those statements with defendant. He stated that he received correspondence from defendant, after 30 days elapsed following the sentencing hearing, requesting an appeal. He responded by sending two pieces of correspondence to defendant with recommendations as to how he should proceed. Grigsby could not recall if defendant ever requested withdrawal of his guilty plea.

¶ 10    Testimony was also provided by defendant which indicated he was immediately placed in segregation for 30 days in Graham Correctional Center after he was sentenced. He further stated that he was unable to get to a law library until two weeks after he was transferred to Vienna Correctional Center. He identified the letters he received from Grigsby and the segregation log from Graham Correctional Center, which were placed into evidence with no objection. He further testified that Grigsby never went over any of the witness statements with him. Following the hearing, the court took the matter under advisement and allowed the parties to submit written closing argument.

4

¶ 11    After receipt of the arguments and additional time during which the parties unsuccessfully negotiated a possible agreement, the trial court issued its decision. The May 2, 2023, order denied the State's motion to dismiss, stating the defendant could seek a sentence reduction as part of his postconviction pleading. The order also denied defendant's motion to withdraw his guilty plea, finding it was untimely filed. It further denied defendant's postconviction petition, stating defendant knew about the deficiencies with Grigsby's representation prior to pleading guilty and defendant's sentence was within the range allowed by the plea agreement. Defendant appealed.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, defendant argues that he was deprived of his right to reasonable assistance of counsel under the Post-Conviction Hearing Act and Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In response, the State contends that defendant waived any challenge to his conviction and sentence because he knowingly and voluntarily entered into a partially negotiated plea agreement, the trial court's denial of the postconviction petition was not against the manifest weight of the evidence, and postconviction counsel's representation was reasonable.

¶ 14    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) "provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial." *People v. Robinson*, 2020 IL 123849, ¶ 42. It is not a substitute for an appeal and instead provides an avenue for collateral attack of the final judgment. *Id.* "There is no constitutional right to the assistance of counsel in postconviction proceedings; the right to counsel is wholly statutory ***." *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Instead, the Act requires counsel to provide "a reasonable level of assistance." *Id.* "To ensure that postconviction petitioners receive this level of assistance, Rule 651(c) imposes specific duties on postconviction counsel." *Id.* Rule 651(c) states, that the

5

"record filed in that [trial] court shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

When the certificate is filed, there is a rebuttable presumption that postconviction counsel's assistance was reasonable. *People v. Custer*, 2019 IL 123339, ¶ 32.

¶ 15    Here, postconviction counsel filed a Rule 604(d) certificate which is used for appeals involving guilty pleas. *People v. Carrizoza*, 2018 IL App (3d) 160051, ¶ 14. While similar requirements exist for Rules 604(d) and 651(c), the certificates cannot certify the same duties as they involve different legal proceedings and "contain noticeable differences." *Id.* ¶ 15 (citing *People v. Mason*, 2016 IL App (4th) 140517, ¶ 22). While there are instances where substantial compliance will be found with a Rule 604(d) certificate in postconviction proceedings, this is not one of them.

¶ 16    For example, in *People v. Kirkpatrick*, 2012 IL App (2d) 100898, ¶ 14, reversal was unnecessary where the certificate was mislabeled but contained the required Rule 651(c) contents. However, if the certificate is both mislabeled and contains the wrong contents, reversal may be required. See *Mason*, 2016 IL App (4th) 140517, ¶¶ 24-25. When the certificate fails to address the Rule 651(c) requirements, substantial compliance cannot be found. *Id.*; see also *Carrizoza*, 2018 IL App (3d) 160051, ¶ 18. Here, no substantially compliant certificate was filed.

6

¶ 17   Despite the lack of a compliant certificate, we must still determine whether postconviction counsel complied with the Rule 651(c) mandate. *Carrizoza*, 2018 IL App (3d) 160051, ¶ 19. The State contends that the trial court noted postconviction counsel consulted with defendant at the September 2022 hearing on the motion and petition. We disagree. Our review of the record reveals that the court was merely reiterating the posture of the case. The court stated:

> "[A]fter that point in time [defendant] was appointed counsel. Again, he had to then get up to speed, review all the pleadings, meet with his client. I don't believe he filed any amended post-conviction petitions, and I think we talked about that, that he felt the issues that need to be raised were raised adequately by [defendant's] *pro se* filing."

Nothing in that statement concludes that postconviction counsel consulted with defendant, or if he did, that he addressed the constitutional deficiencies or reviewed the relevant records outside the plea and sentencing hearings. Counsel's certificate was limited to discussing errors in the plea and sentencing hearing and the motion to withdraw did not assert all of defendant's *pro se* claims. The most we can conclude from our review of the record is that postconviction counsel met with defendant and provided defendant with a copy of the entire criminal case file.

¶ 18   Even if we could conclude that postconviction counsel ascertained defendant's contentions of deprivation of constitutional right, we cannot find that postconviction counsel amended defendant's *pro se* arguments to place them in the proper legal form. Defendant's postconviction pleading included a request to reduce his sentence without a concurrent request to withdraw the guilty plea that set the cap on his possible sentence. See *People v. Linder*, 186 Ill. 2d 67, 74 (1999). Postconviction counsel did not amend those claims to instead allege claims of ineffective assistance of trial counsel as they related to trial counsel's failure to timely file those requests. See

7

*People v. Addison*, 2023 IL 127119, ¶ 27. Failure to satisfy any Rule 651(c) requirement requires remand without "consideration of whether the petition's claims have merit." *Id.* ¶ 33. Here, sufficient failures exist to require remand.

¶ 19 The State also argues that Rule 651(c) is no longer relevant because defendant's petition advanced to the third-stage hearing. While it is true that postconviction counsel's performance is not governed by Rule 651(c) during the third-stage hearing (see *People v. Perkins*, 2024 IL App (5th) 220298-U, ¶ 29; *People v. Knight*, 2020 IL App (1st) 170550, ¶ 38 (collecting cases)), here, defendant's issues do not arise from counsel's third-stage performance. His contentions of error stem from his failure to comply with Rule 651(c) while the case was at the second stage of the proceedings.

¶ 20 Regardless, "Rule 651(c) does not explicitly state which stage of postconviction proceedings it controls." *People v. Smith*, 2022 IL 126940, ¶ 24. Postconviction counsel must comply with the Rule 651(c) mandates and present defendant's claims to the court in the proper legal form. *People v. Nelson*, 2024 IL App (5th) 210311, ¶ 30. The Rule 651(c) "duties persist throughout the proceedings under the Act." *People v. Custer*, 2019 IL 123339, ¶ 32. Here, the record fails to establish that counsel satisfied the Rule 651(c) mandates, either by certificate or upon our review of the record. Accordingly, we reverse for compliance with Rule 651(c). See *People v. Rankins*, 277 Ill. App. 3d 561, 565 (1996) (where compliance is not shown, the case is remanded for a new evidentiary hearing and for counsel to comply with the rule).

¶ 21                                III. CONCLUSION

¶ 22 For the above-stated reasons, we reverse the trial court's denial of defendant's postconviction petition and remand for compliance with Rule 651(c).

¶ 23    Reversed and remanded.